# IN THE COURT OF APPEALS OF IOWA

No. 19-0779
Filed July 1, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WAYNE PATRICK GIBSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Wayne Gibson appeals the district court denial of a fair cross-section jury challenge. **AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**

Shawn C. McCullough of Powell & McCullough, PLC, Coralville, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Wayne Gibson appeals his convictions for second-degree and third-degree sexual abuse, claiming the district court erred in denying his motion challenging the jury's composition. We conditionally affirm and remand for further proceedings consistent with this opinion.

## I. Background Facts & Proceedings.

On June 21, 2018, Wayne Gibson was charged with second-degree and third-degree sexual abuse. Trial was scheduled for January 7, 2019. Following jury selection but before the trial started, Gibson challenged the racial make-up of the jury panel as a violation of his Sixth Amendment right to an impartial jury, claiming it was not a fair cross-section of the community and citing *State v. Plain*, 898 N.W.2d 801 (Iowa 2017). Gibson alleged underrepresentation and systematic exclusion of African-Americans from the jury panel.

The court and attorneys discussed the makeup of both the jury pool and the panel during the initial discussion.[1] The jury pool that week consisted of 112 persons, including one African-American. From the pool, a forty-eight person panel was assigned to Gibson's trial, which included forty-six Caucasians, one Asian-American, and one Hispanic-American.

The court reserved ruling to allow the parties to obtain relevant evidence and build a record on the jury panel question. The jury trial proceeded, and on January 11, the jury found Wilson guilty as charged.

---

[1] "Under Iowa's jury-selection statutes, a jury 'pool' (i.e., venire) consists of all persons who are summoned for jury service and who report. A jury 'panel' consists of 'those jurors drawn or assigned for service to a courtroom, judge, or trial.'" *Plain*, 898 N.W.2d at 821 n.5(citing Iowa Code § 607A.3 (2015)).

On April 17, a post-trial motion hearing was held addressing Gibson's renewed fair cross-section challenge. Gibson produced a statistical analysis calculating representation on Gibson's panel and nine months of Linn County jury pools. The author of the report testified at the hearing. The court found Gibson failed to establish two of the three prongs to make a prima facie showing that his right to a jury drawn from a fair cross-section of the community had been violated. Gibson appeals.

**II. Standard of Review**

"We review constitutional issues de novo." *Plain*, 898 N.W.2d at 810.

**III. Analysis**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." The right to an impartial jury entitles the criminally accused to a jury drawn from a fair cross-section of the community.

*Id.* at 821 (citations and footnote omitted).

The United States Supreme Court articulated a three-part test for establishing a prima facie violation of the fair cross-section requirement in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), and our supreme court adopted the test in *State v. Watkins*, 463 N.W.2d 411, 414 (Iowa 1990). This test requires a defendant to show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364. "If the defendant establishes a prima facie case, the burden shifts to the state to justify the disproportionate representation by proving 'a significant state interest' is 'manifestly and primarily advanced' by the causes of the disproportionate exclusion." *Plain*, 898 N.W.2d at 822 (citation omitted). Shortly after Gibson filed his notice of appeal, the Iowa Supreme Court decided *State v. Lilly*, 930 N.W.2d 293 (Iowa 2019), and *State v. Veal*, 930 N.W.2d 319 (Iowa 2019), which together clarified the second and third prongs of the fair-cross-section analysis.

For the first prong, Gibson and the State agree it is established that African-Americans are a "distinctive" group in the community.

For the second prong, the *Lilly* court determined a standard deviation analysis was the best of three suggested statistical methods to determine underrepresentation. 930 N.W.2d at 302.[2] The court also noted, "the district court should rely on 'the statistical data that best approximates the percentage of jury-eligible' persons in the distinctive group.'" *Id.* at 305 (citation omitted).

However, the statistics in the report submitted by Gibson's expert compare the composition of Gibson's *panel* to aggregated data of jury *pools* in Linn County.[3] The statistical analysis should have been of Gibson's jury pool, not the panel. *See State v. Wilson*, 941 N.W.2d 579, 593 (Iowa 2020) (noting a defendant must make

---

[2] *Lilly* held underrepresentation under the Iowa Constitution occurs when representation of the specified group falls below the representation in the eligible juror population by more than one standard deviation. 930 N.W.2d at 304. In *Veal*, the court held the appropriate measure under the Sixth Amendment was two standard deviations. 930 N.W.2d at 329.

[3] Gibson's expert testified African-Americans as a distinct group were not underrepresented in the jury pool, but no related facts or analysis were presented.

a record of the racial makeup of jurors of the entire jury pool, not just the panel assigned to the defendant's trial to support a *Plain/Duren* motion).

Additionally, Gibson argued below that showing statistical evidence of a historical trend of underrepresentation was sufficient to establish the third prong. However, in *Lilly*, the supreme court adopted the following requirements for the third prong:

> Litigants alleging a violation of the fair cross section requirement would still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. This would almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion. Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations.
>
> Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must Be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011). If a practice that leads to systematic underrepresentation of a distinctive group in jury pools can be identified and corrected, there is no reason to shield that practice from scrutiny just because it is relatively commonplace. At the same time, the defendant must prove that the practice has caused systematic underrepresentation.

*Id.* at 307–08. "The defendant must identify some practice or combination of practices that led to the underrepresentation," not just argue systematic exclusion as inferred from aggregated data. *Veal*, 930 N.W.2d at 330.

Because Gibson did not have the benefit of either *Lilly* or *Veal*'s refinements at the time of trial, we remand the matter to the district court to give Gibson an opportunity to develop his constitutional claim using the new criteria. *See Lilly*, 930 N.W.2d at 308; *Veal*, 930 N.W.2d at 330; *State v. Williams*, 929 N.W.2d 621,

630 (Iowa 2019).  If the district court rejects the claim, Gibson's convictions and sentence shall stand.  If the court finds a constitutional violation occurred, it shall grant Gibson a new trial.

**AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**